UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| J.M., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:25-cv-00152-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FRANK BISIGNANO, *Commissioner of* | ) | **&** |
| *Social Security*, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Plaintiff seeks judicial review of the administrative decision denying her claim for

supplemental security income.  J.M. brings this action pursuant to 42 U.S.C. § 405(g), alleging

error on the part of the administrative law judge who considered the matter.[1]  The Court, having

reviewed the record and for the reasons set forth herein, will **DENY** J.M.'s Motion for Summary

Judgment [R. 10] and **GRANT** the Commissioner's. [R. 12.]

**I**

Plaintiff J.M. applied for supplemental security income (SSI) on December 16, 2021,

alleging disability beginning on December 16, 2021.  The Social Security Administration denied

her claim on initial review.  On reconsideration, the Social Security Administration again denied

J.M.'s claim.  J.M. then had a hearing with Administrative Law Judge Robert B. Bowling, which

again resulted in a denial of J.M.'s benefits on February 28, 2024.  The Appeals Council denied

J.M.'s request for review of that decision, which led her to file the instant Complaint with this

---

[1] The claimant's initials are used in lieu of their name to protect their sensitive medical information contained throughout the Memorandum Opinion and Order.

Court, seeking review under 42 U.S.C. § 405(g).  Both parties have now filed motions for summary judgment which are ripe for review.

## II

To evaluate a claim of disability for Supplemental Security Income disability benefits, the ALJ conducts a five-step analysis. See 20 C.F.R. § 416.920.  If at any step the ALJ can find that the claimant is disabled or not disabled, the analysis stops. *Id*. § 404.1520(a)(4).  First, if a claimant is performing substantial gainful activity, she is not disabled. *Id*. § 404.1520(a)(4)(i).  Second, if a claimant does not have a severe impairment or combination of impairment or combination of impairments, she is not disabled. *Id*. § 404.1520(ii).  Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 303, Subpart P, Appendix 1, she is disabled. *Id*. §§ 404.1520(a)(4)(iii), (d).

Before moving on to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity, which assesses her ability to perform certain physical and mental work activities on a sustained basis despite any impairment. See *id*. C.F.R. §§ 404.1520(e), 404.1545.  Under the fourth step, an ALJ uses a claimant's RFC to determine whether she is still able to do her past work. *Id*. § 404.1520(a)(4)(iv).  If so, she is not disabled. *Id*.

Finally, if an ALJ assesses a claimant's RFC in conjunction with her age, education, and work experience and finds that the claimant cannot adjust to perform other jobs available in significant numbers in the national economy, the claimant is disabled.  See *Id*. §§ 404.1520(g), 404.1560(c).  Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is

2

precluded from performing [her] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

## A

The ALJ completed the requisite five-step analysis to determine J.M.'s disability status. [R. 7 at 21-38.]  He first determined that J.M. has not engaged in substantial gainful employment since December 16, 2021, which is the alleged onset point of the period in which she claimed to be disabled. [*Id*. at 26.]  Next, the ALJ found that J.M. suffered from the following severe impairments: obesity; depressive, bipolar, and related disorders; trauma and stressor related disorders. [*Id*. at 27.]  But at step three, the ALJ found that none of these impairments, nor any combination of them "[met] or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 …" [*Id*. at 28.]

Before proceeding to step four, the ALJ fashioned J.M.'s RFC. See 20 C.F.R. § 404.1520(e).  After considering the record, the ALJ determined that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following limitations: the claimant can never climb ladders, ropes, and scaffolds.  The claimant should avoid hazards, such as the use of moving machinery and to unprotected heights.  Work is limited to tasks performed in a work environment free of fast-paced production requirements involving simple, routine and repetitive tasks, with only occasional workplace changes.  The claimant should have only occasional interaction with the general public, only frequent interaction with co-workers and only frequent interaction with supervisors.  The claimant can maintain attention, concentration and pace for two-hour intervals necessary to complete simple tasks.

[R. 7 at 29-30.]  To make this finding, the ALJ first determined that J.M.'s medically determinable impairments could reasonably be expected to cause some alleged symptoms. [*Id*.]  The ALJ also found, however, that J.M.'s statements regarding the intensity, persistence, and

limiting effects of her symptoms were not entirely consistent with "the medical evidence and other evidence in the record." [*Id.*]

Next, the ALJ proceeded to step four, concluding that J.M. is capable of performing past relevant work as a warehouse worker, housekeeping cleaner, and driver, because these jobs do not require "the performance of work-related activities precluded by the claimant's residual functional capacity." [*Id.* at 35.]  Proceeding finally to step five, the ALJ heard from a vocational expert and determined that there are numerous jobs that J.M. can perform in the national economy, including laundry laborer; inspecting, checking, sorting personnel; and hand packing personnel. [*Id.* at 37.]  Consequently, the ALJ found that J.M. had not been under a disability, as defined in the Social Security Act from December 16, 2021, through the date of his decision. [*Id.*]

**B**

The Court's review of the ALJ's determination is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence" is said to be "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To decide whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  A reviewing court is restricted from making factual findings *de novo*, resolving conflicts in the evidence, or making credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012).  Rather, if the Commissioner's decision is supported by substantial, legitimate evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id*. at 714.

Here, J.M. effectively asserts a single argument, that "[t]he ALJ failed to account for the 'total limiting effects' of Plaintiff's impairments … resulting in a decision that is not supported by substantial evidence." [R. 10 at 1, 6.]  More specifically, J.M. contends that the RFC fashioned by the ALJ failed to properly account for two specific categories of evidence: (1) medical opinion evidence, namely the opinion of Dr. Brian E. McLean; and (2) the Plaintiff's self-described limitations. [*Id*. at 7-8.]  After considering the record, and the arguments related thereto set forth by J.M. and the Commissioner, the Court concludes that the ALJ's RFC is supported by substantial evidence, and, consequently, J.M. is not entitled to relief.

**1**

J.M. first contends that the ALJ did not properly account for the medical opinion of Dr. McLean in crafting her RFC.  She argues that, "[t]he ALJ's RFC does not account for inevitable off-task limitations due to her symptoms, nor does it fully account for her social and stress tolerance limitations," and, thus the RFC fails "to account for the 'total limiting effects' of her impairment." [R. 10 at 9.]  The Court disagrees.

Pursuant to 20 C.F.R. § 416.920c, an ALJ must consider all medical opinions contained in the record. There are several factors an ALJ must consider when evaluating medical opinions: "(1) supportability; (2) consistency; (3) relationship with claimant; (4) specialization; (5) and 'other factors that tend to support or contradict a medical opinion or prior administrative medical findings.'" *Gorman v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 111313, at *11 (E.D. Ky. June 23, 2022) (quoting *Rodriguez v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 47855, at *5 (M.D. Fla. Mar. 17, 2022). The regulation provides that while all factors are to be considered, the most important considerations are the supportability and consistency of the medical opinion. 20 C.F.R. § 416.920c(b)(2). Often, once the ALJ has examined the totality of the evidence in the record, contradictions and inconsistencies become apparent. In such circumstances, it falls to the ALJ to "[examine] conflicting evidence, [weigh] its probative value, and [reach] a conclusion." *T.B. v. Bisignano*, 2025 U.S. Dist. LEXIS 260390, at *8 (E.D. Ky. Dec. 17, 2025); see also *Sallaz v. Comm'r of Soc. Sec.*, 2024 U.S. App. LEXIS 14411, at *7 (6th Cir. June 12, 2024) ("weighing conflicting evidence [is] properly within the ALJ's role"); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence").

In J.M.'s view, the ALJ's consistency and supportability analysis as to Dr. McLean's opinion consisted of a "highly selective recitation of the facts," which overlooked several abnormal findings as to her symptoms, including findings related to her mood. [R. 10 at 10, 12.] As to supportability, J.M. states that the ALJ's analysis failed to "identify why abnormal clinical findings would no support Dr. McLean's opinions and avoids other abnormal and highly relevant clinical findings from the examination," and is thus, "neither accurately nor logically bridged to

6

the record." [*Id*. at 11.]  As to consistency, J.M. asserts that the ALJ "failed to explain why abnormal findings are inconsistent with Dr. McLean's opinion," and so "[t]here is no logical bridge between this rationale and the ALJ's persuasiveness finding." [*Id*. at 12.]  At bottom, however, J.M. essentially takes issue with the ALJ's determination as to the persuasiveness, or lack thereof, of Dr. McLean's opinion in view of the entire record.  In practical effect, this asks the Court to intrude upon the ALJ's role in evaluating conflicting evidence and to re-weigh the opinion of Dr. McLean.  This exceeds the scope of review available to district courts.

Rather, the Court finds that the ALJ's persuasiveness analysis adhered to the regulations and, thus, the RFC was supported by substantial evidence.  Dr. McLean performed a consultative examination on J.M. in February 2023, and rendered several opinions: (1) that J.M. had a moderate impairment in her capacity to understand, remember, and carry out instructions; (2) that J.M. had a moderate to marked impairment in her ability to tolerate stress and the pressure of day-to-day employment; (3) that J.M. had a moderate impairment in her ability to sustain attention and concentration towards performance of simple, repetitive tasks; and (4) that J.M. had moderate to marked impairment in her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting. [R. 7 at 34.]

Beginning with supportability, the ALJ concluded that Dr. McLean's findings were not entirely supported by the examination notes, specifically evidenced through several inconsistencies. [*Id*.]  The ALJ observed that while Dr. McLean noted that J.M.'s "attention was distractible," "[h]er concentration was scattered," and that "[s]he required frequent redirection from the consultant to remain on task during interview and assessment," he made several notations suggesting a lesser degree of impairment. [*Id*.]  For example, the ALJ observed that Dr. McLean himself recorded that JM demonstrated adequate judgment, abstract thinking, adequate

insight, normal eye contact, and that her reality testing was intact. [*Id*.] As to her mood, Dr. McLean noted that her attitude was "cooperative." [*Id*.] Thus, based upon these findings, the ALJ found that Dr. McLean's medical opinions were contradicted, at least in part, by his own examination notes.

As to consistency, the ALJ found that the opinion of Dr. McLean was not in accord with the totality of the evidence in the record. Contrary to the opinion of Dr. McLean, the ALJ found that the body of evidence derived from J.M.'s treatment notes suggested that the J.M. had "thought processes [which] were goal directed and logical," "was fully oriented," and possessed "adequate insight," to which he cited eleven different findings within the record. [R. 7 at 34.] The ALJ also noted nine places in the treatment notes demonstrating that J.M. demonstrated normal mood, and seven places in the record in which J.M. exhibited anxiousness, a depressed mood, and tearful effect. The ALJ also observed fourteen examples in the notes in which J.M. presented well-groomed, calm, cooperative, and/or exhibited normal eye contact / speech. [*Id*.]

Additionally, the ALJ found that Dr. McLean's opinion was also inconsistent with the other medical opinions in the record, both from other consultative examiners and the state agency examiners. [*Id*. at 33-35.] Having found the opinion of Dr. Emily Skaggs partially persuasive, the ALJ determined that Dr. Skaggs' opinion partially conflicted with that of Dr. McLean. Contrary to Dr. McLean's opinion, Dr. Skaggs had concluded that J.M. exhibited normal attention and concentration and did not exhibit memory deficiencies. [*Id*. at 33.] Likewise, the ALJ determined that the opinions of the state agency psychologist, Dr. Mary Thompson, were generally persuasive. [*Id*. at 34-35.] Even so, the ALJ ascribed somewhat different limitations than those opined by the state agency psychologist, which were more consistent with the evidence exhibited in the whole record. [*Id*. at 35.]

Even viewing the report of Dr. McLean in the light most favorable to J.M., the Court cannot find that the ALJ erred in finding his opinion not persuasive. This is precisely the role of the ALJ when faced with conflicting evidence. The Court understands that J.M. wishes that the ALJ had ascribed greater persuasiveness to Dr. McLean's opinion, and that doing so might have resulted in a different outcome for her application. Yet, Congress has determined that the difficult, fact-intensive process of resolving discrepancies in the record lies almost exclusively with the ALJ. The Court is, therefore, unable to re-weigh the evidence, or provide any other form of judicial relief, so long as the ALJ's findings were supported by substantial evidence. To do otherwise would squarely exceed the scope of judicial review.

Rather, the Court concludes that in making his persuasiveness finding as to Dr. McLean's opinion, the ALJ engaged in a thorough analysis of the opinion's supportability and consistency, as required by the regulation. The ALJ reasonably considered the evidence before him in this case and fairly disregarded this opinion evidence for well-articulated and justifiable reasons. Based on the record, his ultimate decision to find that J.M. could perform work in a work environment free of fast-paced production requirements and involving simple, routine, and repetitive tasks was supported by substantial evidence. Likewise, his decision that J.M. could tolerate occasional workplace changes, frequent interaction with co-workers and supervisors, and occasional interaction with the general public, was also supported by substantial evidence.

**2**

Next, JM states that the ALJ erred in rejecting Plaintiff's self-described limitations concerning the intensity, persistence, and limiting effects, by improperly concluding that her subjective statements were inconsistent with the objective evidence in the record.

9

In the course of a disability determination, an ALJ is required to consider subjective allegations of pain, symptoms, and limitations caused by a claimant's impairment. 20 C.F.R. § 416.929(a).  However, an "individual's statements as to pain or other symptoms shall not alone be conclusive evidence of disability…" 42 U.S.C. § 423(d)(5)(A).  Rather, there must be medical evidence showing the existence of a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged," and which, when considered with all the other evidence, "would lead to a conclusion that the individual is under a disability." *Id*.; see also 20 C.F.R. § 416.929.

The Regulations prescribe a two-step process for assessing a claimant's subjective allegations of pain and other symptoms. *Rogers v. Comm'r of Soc Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).  First, the ALJ must determine if the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms. 20 C.F.R. § 416.929(c)(1).  Second, the ALJ must evaluate the intensity and persistence of those symptoms in order to determine how those symptoms limit the claimant's capacity for work. *Id*.  Here again, it is the primary responsibility of the ALJ, not of the district court, to evaluate the credibility of the claimant. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981))  And, again, such credibility determinations must be "reasonable and supported by substantial evidence." *Rutherford v. O'Malley*, 2024 U.S. Dist. LEXIS 90060, at *8 (E.D. Ky. May 20, 2024) (citing *Rogers*, 486 F.3d at 249).

J.M. contends that the ALJ erred at step two of this analysis, where he found that J.M.'s self-described limitations were not consistent with the record as a whole.  In J.M.'s view, the ALJ could not have validly evaluated her self-described limitations because, as already discussed

10

above, he did not properly evaluate the medical evidence in the record. [R. 10 at 14.]  Put differently, J.M. contends that because the ALJ is required to evaluate the self-described "in relation to" the medical opinion evidence in the record, this analysis can only be done properly if the ALJ did not err in examining the medical opinion evidence beforehand.  J.M. also states that "the ALJ failed to provide specific reasons for finding that her statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with the record[.]" [*Id.*]

As to J.M.'s self-described physical limitations, namely hypertension, the ALJ determined that the limitation was non-severe because it "is an impairment that can usually be managed with lifestyle changes and medication," and because "there is no evidence that the claimant has experienced any significant symptoms rising from the hypertension." [R. 7 at 27.] The Plaintiff does not squarely dispute the ALJ's analysis as to her physical impairments. See *Rutherford*, 2024 U.S. Dist. LEXIS 90060, at *8 ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (citing *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021)).

As to J.M.'s self-described mental limitations, the ALJ found that "they are somewhat inconsistent with the record." [*Id.* at 31.]  J.M. suggests that this conclusory statement represents the entirety of the ALJ's analysis on the subject. [R. 10 at 14-15.]  On the contrary, however, the ALJ spends the next four pages of the record noting that while there is an "inherently subjective nature of mental diagnoses[,]" JM's self-described limitations are inconsistent with the full body of objective evidence in the record. [R. 7 at 31-35.] The ALJ does not fully disregard the Plaintiff's subjective statements; rather, he weighs the subjective assertions of the Plaintiff "in

11

relation to" the medical opinion evidence. [*Id.*]  And, as already stated, the ALJ's findings with respect to the RFC and the persuasiveness of certain medical opinions were supported by substantial evidence.  Once more, this is precisely the role Congress intended for the ALJ – to determine the credibility of persuasiveness of the evidence present within the record.  And, that is precisely what the ALJ has done here.  In sum, the Court concludes that the ALJ's credibility determination as to J.M.'s self-described limitations are reasonable and supported by substantial evidence.

### III

J.M. objects to the RFC that the ALJ determined in rejecting her application for disability benefits.  While the Court sympathizes with J.M.'s difficulties, its role is not to retry her case.  Instead, the Court finds that substantial evidence supported the ALJ's decision.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1.  Plaintiff J.M.'s Motion for Summary Judgment **[R. 10]** is **DENIED;**

2.  The Commissioner's Cross-Motion for Summary Judgment **[R. 12]** is **GRANTED**;

3.  Judgment in favor of the Commissioner will be entered promptly.

This the 18th day of May 2026.

Gregory F. Van Tatenhove
United States District Judge

12